Day, J.
On the 27th day of September, 1853, the steamboat Southerner was seized upon a warrant issued by a justice of the peace for Cleveland, Cuyahoga county, in a proceeding commenced by Roderick Calkins, under the provisions of the act “ to provide for the collection of claims against steamboats and other watercraft, and authorizing proceedings against the same by nameand, on the same day, the constable, upon a bond executed to him, in accordance with the fifth section of that act, discharged the boat from the seizure, and delivered her into the possession of the owner, who afterward procured an insurance on the boat. In the spring of 1854, she was “ sunk, wrecked, and abandoned, without said county, to the underwriters,” who sold the boiler in dispute, being part of the wreck, to the defendants in error. They shipped the boiler to Cleveland, where it was seized by the plaintiffs in in error, and sold on execution issued upon the judgment rendered in favor of said Calkins before the boat was wrecked. Thereupon the defendants in error brought their actioii against the plaintiffs in error to recover the value of the boiler.
On the trial in the distinct court, the defendants in the action requested the court to charge the jury that, if said *293 boiler was a part of said steamer, at the time she was first seized as aforesaid, the levy and sale on the execution would give a good title against the party purchasing between the time of the seizure of the boat and the levy of execution on the boiler; and that by reason of the original seizure, a lien adhered to the boiler, after it was separated from the boat, paramount to the right of the purchasers from the underwritters. This charge the court refused; but charged the jury that, the steamer having been wrecked and lost, the boiler, so recovered from her and sold to the plaintiffs, was no longer liable to be seized on execution upon said judgment; and that the plaintiffs, by their purchase, had acquired a title to said boiler paramount to, and divested of any lien acquired in said proceedings, in favor of said Calkins.
A verdict and judgment were rendered in favor of the plaintiffs below. The defendants excepted to the charge of court, and have brought this petition in error to reverse the judgment; and claim that, “ where a watercraft has been seized and bonded, and then lost, as a vessel, the lien remains upon the parts thereof saved, the same as it would have remained on the vessel, had she not been lost; and that a sale of such parts thus saved upon execution, by virtue of the'lien acquired by the original seizure, shall take precedence of a private intermediate sale.”
The case of Raymond v. Whitney, 5 Ohio St. Rep. 201, is the only authority to which our attention is called in support of this proposition. That case does not go to that extent; but determines only that, as against prior creditors, the lien attached, by the seizure of the -craft, continues after it has been discharged, by bond to the sheriff, under the provisions of the fifth section of the watercraft law. It does not go to the extent of holding that, although such lien may exist upon the vessel, it continues upon the parts thereof after a wreck, when th.e officer can not replace the vessel seized, or the bail return it in discharge of their liability on the bond. If a lien did extend to the parts of the vessel reclaimed from the wreck, it does not follow that it did as against parties who came law *294 fully into possession of such parts, and have claims thereon, recognized by maritime law, arising after the discharge on bond to the officer. But it is not necessary, in this case, to determine, nor do we decide, whether the Hen attaching to a boat, by reason of its seizure, adheres to its parts after it has been wrecked; for, if such a Hen exists, the question recurs, whether, in this case, it was paramount to the right of the party acquiring title from the underv/riters; if not, the charge of the court below did not prejudice the plaintiffs in error. Unlike the present statute, when this boat was seized, there was no express provision of the statute making the debts; for which watercraft might be seized under its provisions, a Hen on the boat; but the Hen attached only from the time of the seizure. 17 Ohio Rep. 359. The claim of the plaintiffs in error does not rest upon any maritime-lien adhering to the boat, but on the implied Hen resting upon her after its discharge on bond, by virtue of its seizure under the statute.
Although it was held, in the case of Raymond v. Whitney, that the lien continues, “ as against all prior creditors of the craft, making subsequent seizures thereof,” in the later case of Van Valkenburg v. Kingsbury (14 Ohio St. Rep. 353), this -court, limit the Hen to claims existing at the time of the seizure. The reasons for this distinction are fully discussed in that case; and, we think, the principles there settled are applicable to- this case. After the discharge on bond “ the craft goes forth as the accredited representative of all interests, and that all must submit to the liabilities she incurs, in executing her mission.” It was not only lawful and proper for the owners to procure an insurance on the boat, but, possibly, it was a duty they owed to her creditors, to insure her against the perils incident to her use after such - discharge. The well-established principles of maritime law recognize the right of the insured to abandon the wreck of an insured vessel to the underwriters; and, in many cases it is incumbent on him to do so, to obtain the full benefit of his policy. Such abandonment, when properly made, transfers the title of the wreck to the underwriters. 5 Pet. Rep. 622; 6 Ohio St. Rep. *295 200. As an incident pertaining to their contract of insurance, they have the right to sell the wreck thus abandoned to them, to indemnify themselves for the loss so cast upon them. The title of a purchaser from the underwriters of parts of the wreck, is not that of an ordinary purchase from the owner of the craft, but is derived through rights accruing, by reason of the wreck of the vessel, under the principles of maritime law.
Sound public policy, and the spirit and reason of the former decisions of this court, require us to hold, that the title of such purchaser is paramount to the lien acquired by the seizure of the vessel when derived after it has been discharged on bond; and, that, as stated in the case of Van Valkenburg v. Kingsbury, “ when a bond is taken, although the vessel may be burned or wrecked, or sold upon a liability arising out of her subsequent employment, .... the proceedings of the creditor are in no way interfered with; the bond, in such an event, becoming a substitute for the craft, and his only resource for obtaining satisfaction of any judgment he may recover.”
The judgment of the^ district court is affirmed.
Brinkerhoee, 0. J., and Scott, White, and Welch, JJ., concurred.